UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLOUDONE LLC, a Washington limited liability company,<br><br>                    Plaintiff,<br><br>        v.<br><br>AUTO TRAKK, LLC,  a Pennsylvania limited liability company, and BAMA COMMERCIAL LEASING, LLC, a Pennsylvania limited liability company,<br><br>                    Defendants. | CASE NO. 3:17-cv-05302-RBL<br><br>ORDER ON DEFENDANT AUTO TRAKK LLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2) |

THIS MATTER comes before the Court on Defendant Auto Trakk, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2). Dkt. 20. The Court has considered the motion, Plaintiff Cloud One LLC's Response (Dkt. 26), Auto Trakk's Reply (Dkt. 28), CloudOne's Surreply (Dkt. 32-1), and the remainder of the file herein. The Court deems oral argument unnecessary. The Court has personal jurisdiction over Auto Trakk, because Auto Trakk has sufficient "minimum contacts" with the State of Washington. Auto Trakk's motion should be denied.

## **BACKGROUND**

The Complaint centers on the theory that the named defendants, Auto Trakk and BAMA Commercial Leasing breached a contract ("the Agreement") by failing to pay the plaintiff, CloudOne, for calling center services provided. Dkt. 1. Default judgment has been entered against BAMA Commercial Leasing. Dkt. 31.

CloudOne is a company based in Vancouver, Washington, with two directors relevant to the present motion, CTO Bryan Hunter and CEO Jim Crouse. Dkt. 27 at ¶3. According to the declaration of Mr. Hunter, in 2014, Mr. Hunter and Mr. Crouse were first introduced to "an executive with Auto Trakk," Joel Breneman, who "represented to Mr. Crouse and [Mr. Hunter] that he was 'running' Auto Trakk." *Id*. at ¶4. Mr. Hunter narrates that he and Mr. Crouse traveled to Pennsylvania in January of 2015 to meet with "Mr. Breneman and other Auto Trakk executives" about the possibility of a business relationship. *Id*. at ¶5; Dkt. 32-2 at ¶2. Per Mr. Hunter, in early 2015, Mr. Breneman called Mr. Crouse and Mr. Hunter by telephone to solicit CloudOne's call center services so that Auto Trakk could meet obligations on a deal it had secured as Uber's automotive leasing broker. *Id*. at ¶¶6, 7. During this conversation, to which Mr. Hunter was privy, Mr. Crouse and Mr. Breneman agreed to terms of a contract, which was later memorialized in writing ("The Agreement"). *Id*. at ¶¶7-9.

Mr. Hunter vouches for CloudOne's performance pursuant to the Agreement, where between March 2015 and March 2017, CloudOne purportedly built out a computer-based call center and processed approximately 300,000 "leads" and 50,000 auto lease applications, work for which CloudOne regularly invoiced Auto Trakk. Dkt. 27 at ¶¶8, 10, 16. Mr. Hunter personally received nearly 500 emails from individuals using "autotrakk.com" addresses, including Mr. Breneman, Zach Monaghan, and Kenneth Dickey. *Id.* at ¶¶12, 13. Another

unspecified CloudOne employee received over 1,400 emails from "autotrakk.com" addresses. *Id.* Mr. Hunter represents that Mr. Breneman and Mr. Monaghan travelled to CloudOne's Vancouver, Washington offices in mid-2016 "to discuss updates and changes to the system." *Id.* at ¶15.

Auto Trakk has a different take on the circumstances surrounding the formation and execution of the Agreement, maintaining that CloudOne contracted with BAMA Commercial Leasing, not Auto Trakk. According to Merril Davis, CEO of Auto Trakk, Auto Trakk and BAMA Commercial Leasing are both corporations with principal places of business in Pennsylvania, but they are distinct corporate entities, with no shared officers or employees. Dkt. 21 at ¶¶1, 2, 4, 5. Mr. Davis further declares that Auto Trakk's "only connection" to CloudOne stems from the services Auto Trakk provided to BAMA Commercial Leasing, including "servicing the leases of [Uber] drivers referred to [BAMA Commercial Leasing] by CloudOne." *Id.* at ¶8. Auto Trakk has submitted an unsigned copy of the Agreement, which names CloudOne and BAMA Commercial Leasing, not Auto Trakk. Dkt. 21.

Auto Trakk acknowledges that Mr. Breneman and Mr. Monaghan used "autotrakk.com" email addresses, but, according to Mr. Winters, CFO to Auto Trakk, Mr. Breneman and Mr. Monaghan are President and COO, respectively, for BAMA Commercial Leasing, and neither individual was ever an "executive" of or employed by Auto Trakk. Dkt. 30 at ¶¶3, 7, 8. Further, Mr. Winters states, "no one from Auto Trakk met with CloudOne" in Pennsylvania as Mr. Hunter has described, because at that time, when Auto Trakk's CEO was on a leave of absence, "[Mr. Winters] would have been present if any such meeting occurred," and Mr. Winters has no recollection of that meeting. *Id.* at ¶4. Further, although CloudOne may have invoiced Auto

Trakk for call center services received, BAMA Commercial Leasing, not CloudOne, paid out the invoices, which were "mislabeled" by CloudOne. *Id.* at ¶¶9, 10.

Auto Trakk seeks dismissal for lack of personal jurisdiction on the basis that it has not had sufficient minimum contacts with the forum state, Washington. Dkt. 20. Auto Trakk seeks dismissal with prejudice and requests the recovery of attorneys' fees. Dkt. 20 at 9, 10.

**DISCUSSION**

A. Fed. R. Civ. P. 12(b)(2) legal standard.

Fed.R.Civ.P. 12(b)(2) governs the dismissal of an action based on lack of personal jurisdiction. Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir.2004). Plaintiff cannot simply rest on the bare allegations of its complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir.1977). Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger*, 374 F.3d at 800. A prima facie showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage,* 65 F.3d 1495,1498 (9th Cir.1995). Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.*

Where no applicable federal statute addresses the issue, a court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir.2002).

Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management Corp.,* 95 Wn.App. 462, 465 (1999). Because Washington's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. *Schwarzenegger,* 374 F.3d at 800–01.

  To exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum state such that exercising jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger,* 374 F.3d at 801, citing *International Shoe v. Washington,* 326 U.S. 310, 316 (1945). In determining whether a defendant had minimum contacts, courts focus on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186 (1977). Personal jurisdiction exists in two forms, general[1] and specific. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002). To establish specific jurisdiction, the plaintiff must show that: (1) defendant purposefully availed itself of the privilege of conducting activities in Washington, thereby invoking the benefits and protections of its laws; (2) plaintiff's claims arise out of defendant's Washington-related activities; and (3) the exercise of jurisdiction would be reasonable. *Easter v. American West Financial,* 381 F.3d 948, 960–61 (9th Cir.2004); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000). If the plaintiff makes a sufficient showing as to the first two prongs, the burden shifts to the defendant.

---

[1] CloudOne does not raise general jurisdiction. *See* Dkt. 26 at 4-9.

B. Specific jurisdiction.

   **1. Purposeful availment.**

   The purposeful availment prong considers whether the defendant's conduct has invoked the forum state's benefits and protections "such that [the defendant] should reasonably anticipate being haled into court there." *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297. A defendant "purposefully avails" itself of a forum when it acts in a way that creates a "substantial connection" with the state, *Burger King,* 471 U.S. 462, 475 (1985), as where it deliberately engages in significant activities there, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 (1984), or creates "continuing obligations" between himself and the forum state's residents. *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 648 (1950). In exchange for taking advantage of the forum state's "benefits and protections," the defendant must submit to the burden of being sued there. *Burger King,* 471 U.S. at 475–76. The purposeful availment prong "prevents defendants from being haled into a jurisdiction through random, fortuitous, or attenuated contacts." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 560 (9th Cir. 1995), citing to *Burger King*, 471 U.S. at 474 (1985).

   According to CloudOne, Auto Trakk purposefully availed itself of the benefits of the State of Washington by soliciting business in Washington, where Auto Trakk, through Mr. Breneman, Mr. Monaghan, and Mr. Winter, affirmatively contacted CloudOne CEO, Mr. Crouse, and CTO, Mr. Hunter, in Vancouver, Washington. Dkt. 26 at 6. After Auto Trakk initiated communications with CloudOne, the ultimate result, in CloudOne's view, was the formation of a contract, the Agreement. CloudOne posits that the Agreement contemplated a continuing relationship, and over a two year period CloudOne employees and contractors—who

reside in Washington—performed a substantial amount of work pursuant to the Agreement for which CloudOne invoiced Auto Trakk. *Id*.

Auto Trakk makes two primary arguments. First, Auto Trakk advances a "not me" defense, arguing that all contacts with the State of Washington, such as formation of the Agreement, were created only indirectly because of Auto Trakk's business relationship with BAMA Commercial Leasing, which had contractual obligations to CloudOne. At most, Auto Trakk concedes, Auto Trakk had an indirect relationship to CloudOne. Dkt. 28 at 3-5. Second, Auto Trakk argues, even if Auto Trakk was subject to the Agreement, "a contract alone does not automatically establish minimum contacts," and there has been no showing of affirmative conduct by Auto Trakk to purposefully avail itself of the benefits and protections of Washington. Dkt. 28 at 7, 8.

In support of its first argument, Auto Trakk relies on declarations of Auto Trakk's CEO, Merrill Davis, CFO, Marshall Winters, and Senior Underwriter, Kenneth Dickey. Dkt. 21, 29, 30. Per Auto Trakk, Mr. Breneman and Mr. Monaghan did not "run" Auto Trakk when the alleged meetings with CloudOne occurred, and neither Mr. Breneman nor Mr. Monaghan were ever employed by Auto Trakk or authorized to act on its behalf. Dkt. 28 at 5. Mr. Breneman, Auto Trakk posits, was the CEO of BAMA Commercial Leasing. *Id*. at 6. Although Mr. Dickey was then-employed by Auto Trakk, he did not negotiate the Agreement and only did work pursuant to Auto Trakk's obligations to BAMA Commercial Leasing. *Id*. at 7.  Next, although CloudOne was emailed directly from "@autotrakk.com" email addresses, Auto Trakk argues, the addresses were used because of the servicing relationship between BAMA Commercial Leasing and Auto Trakk. *Id*. at 6, 7. Finally, the fact that CloudOne invoiced Auto Trakk does not

establish that the invoices were properly directed, especially because they were paid out by BAMA Commercial Leasing, not Auto Trakk. *Id*.

CloudOne has met its prima facie burden to satisfy the purposeful availment prong. Auto Trakk should have reasonably anticipated being haled into court in this district, and subjecting Auto Trakk to the jurisdiction of this Court is not the result of random, fortuitous, or attenuated contacts with the State of Washington. Instead, CloudOne has shown that AutoTrakk established and relied upon a long-term business relationship with CloudOne that contemplated continuing obligations to forum residents. *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986) ("The purposeful availment prong is satisfied when a defendant . . . creates continuing obligations to forum residents."). The declaration of Mr. Hunter, CloudOne's CTO, is important to this finding. The declaration narrates that Mr. Hunter observed the following: in mid-2014 Mr. Breneman represented to Mr. Hunter and CloudOne's CEO, Mr. Crouse, that he was "running" Auto Trakk; in early 2015 Mr. Breneman called Mr. Hunter and Mr. Crouse, and, with Mr. Hunter listening, Mr. Breneman and Mr. Crouse verbally negotiated terms of the Agreement; from approximately March 2015 until March 2017, CloudOne performed services pursuant to the terms of the Agreement, during which time CloudOne built out a calling center platform and received approximately over 1,500 emails from @autotrakk.com email addresses; and in mid-2016 Mr. Breneman and Mr. Monaghan traveled to CloudOne's office in Vancouver, Washington, "to discuss updates and changes" to CloudOne's performance. Dkt. 27 at ¶15. From these facts, the Court concludes that CloudOne has met its prima facie burden to show that Auto Trakk purposefully directed contacts into Washington.

Auto Trakk's arguments rely heavily on the conclusion that Auto Trakk and BAMA Commercial Leasing are distinct entities. Mr. Hunter's declaration contradicts this, by pointing

1  to overlap between the two corporations in the solicitation and execution of the Agreement and

2  the practice of the parties in the years following. As CloudOne argues in its Surreply, CloudOne

3  has *at least* shown that Mr. Breneman acted on behalf of Auto Trakk with apparent, if not actual,

4  authority. Further discovery may prove otherwise, but at present the Court must construe the

5  record in favor of CloudOne.

6      The facts substantiated by CloudOne distinguish this case from those relied upon by Auto

7  Trakk. Auto Trakk points to *Boschetto* as guidance for the rule that a contract alone does not

8  automatically establish minimum contacts. In *Boschetto*, the Ninth Circuit affirmed that "the lone

9  transaction for the sale of one item" failed to show purposeful availment, where a California

10 consumer sued a Wisconsin auto dealership for a car on purchased eBay. The nature and quality

11 of the alleged contacts in this case are easily distinguished. In this case, CloudOne allegedly

12 performed pursuant to the Agreement for approximately two years, which involved a visit by Mr.

13 Breneman to CloudOne's offices in Washington, as well as thousands of emails exchanged.

14     Auto Trakk points to *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015), for the

15 proposition that the purposeful availment prong requires a defendant to perform affirmative

16 conduct beyond just forming a contract. In this case, CloudOne has made a showing that Mr.

17 Breneman solicited CloudOne to negotiate the Agreement. Moreover, not all contracts are

18 created equal, and in this case, execution of the Agreement resulted in ongoing coordination and

19 communication between AutoTrakk and CloudOne over a period of approximately two years.

20 Mr. Breneman visited Washington on just one occasion, but "it is an inescapable fact of modern

21 commercial life that a substantial amount of business is transacted solely by mail and wire

22 communications . . . thus obviating the need for physical presence within a State[.]" *Burger*

23 *King*, 471 U.S. at 476.

24

1   CloudOne has met its prima facie burden to show purposeful availment by Auto Trakk.

2   **2. Arise out of Washington-related activities.**

3   "[A] claim arises out of the forum-related activities if it would not have happened but for

4   the forum-related activities." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 272 (9th

5   Cir. 1995).

6   CloudOne argues that "but for" Auto Trakk's actions in soliciting and hiring CloudOne,

7   and CloudOne performing services for Auto Trakk in Washington, CloudOne's contract and

8   quasi-contract claims would not have arisen. Dkt. 26 at 9.

9   Auto Trakk's "but for" argument is intertwined and coextensive with its purposeful

10  availment argument. *See* Dkt. 20 at 7, 8.  (The Reply makes no direct mention of the "arise

11  of" prong. *See* Dkt. 28.)

12  CloudOne's logic seems sound. Again, it is assumed that Mr. Breneman and others acted

13  on behalf of Auto Trakk. *See above*. CloudOne has met its prima facie burden to show that its

14  claims arise out of Auto Trakk's forum-related activities.

15  **3. Reasonableness.**

16  If the plaintiff makes a sufficient showing as to the first two elements, then courts

17  "presume that an otherwise valid exercise of specific jurisdiction is reasonable." *Ballard v.*

18  *Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The burden shifts to the defendant to "present a

19  compelling case that the presence of some other considerations would render jurisdiction

20  unreasonable." *Id.*, citing *Burger King*, 471 U.S. at 477. When weighing whether the exercise of

21  jurisdiction over a nonresident defendant is reasonable, courts in this circuit consider seven

22  factors, none of which is dispositive:

23      1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2)
        the burden on the defendant of defending in the forum; (3) the extent of conflict with the

24

sovereignty of the defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interests in convenient and effective relief; and (7) the existence of an alternative forum.

*Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001).

Auto Trakk argues that personal jurisdiction over Auto Trakk is not reasonable, on the following grounds: Auto Trakk has negligible, if any, contacts with Washington, Auto Trakk did not purposefully direct business to Washington, Auto Trakk does not earn revenue directly from consumers in Washington, Washington has a neutral interest in the dispute, and all of Auto Trakk's material witnesses and discovery are located in Pennsylvania, not Washington. Dkt. 20 at 8, 9; Dkt. 28 at 8, 9.

CloudOne addresses three of the grounds raised by Auto Trakk. According to CloudOne, it has shown sufficient contacts by Auto Trak's purposeful availment of benefits of Washington. Next, CloudOne contends, Washington has a strong interest in redressing harm to its residents by nonresidents. Finally, CloudOne argues, although Auto Trakk may have nonresident witnesses, Auto Trakk has not shown that it will suffer an "inconvenience so great as to constitute a deprivation of due process." Dkt. 26 at 10.

Auto Trakk has not met its burden to overcome the presumption that jurisdiction is reasonable. Weighing the extent of Auto Trakk's purposeful interjection into Washington favors CloudOne, given Auto Trakk's contacts with the forum state. *See* §B.1 above.

Weighing the burden on Auto Trakk to defend in Washington, this factor slightly weighs in favor of Auto Trakk, because Auto Trakk represents that its material witnesses and documents are located in Pennsylvania. However, Auto Trakk has not elaborated on the extent of its burden. *See* Dkt. 28 at 9. Although costs for a trial in Washington could be more expensive for Auto Trakk, out of state discovery in Pennsylvania could be more costly for CloudOne, e.g., deposing

Auto Trakk's material witnesses, so on balance, this factor weighs only slightly in favor of Auto Trakk, given its meager shower.

Neither party leans on the third factor regarding the extent of conflict with the sovereignty with the defendant's home state. This factor is neutral.

Weighing the State of Washington's interest in adjudicating the dispute, this factor is either neutral or weighs in favor of CloudOne. *C.f. Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991 ("toss-up"); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1133 (9th Cir. 2003); *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986).

Weighing the most efficient judicial resolution of the controversy, this factor slightly weighs in favor of Auto Trakk, because the majority of its witnesses apparently reside in Pennsylvania. However, "this factor is no longer weighed heavily given the modern advances in communication and transportation." *Panavision International v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

Weighing the importance of the forum to the plaintiff' interest in convenient and effective relief, this factor quite obviously weighs in favor of CloudOne, although "this factor is not of paramount importance." *Harris*, 326 F.3d at 1133.

Weighing the existence of an alternative forum, this factor weighs in favor of Auto Trakk, because presumably a federal district court in Pennsylvania is available and would be a more convenient forum for Auto Trakk.

Considering these factors in sum, the balance tips slightly in favor of CloudOne. Auto Trakk has therefore not met its burden to present a compelling case that jurisdiction is unreasonable. Auto Trakk's motion should be denied without prejudice.

C.  Fees.

Because Auto Trakk has not prevailed on its motion, Auto Trakk's request for an award of fees should also be denied. *See* RCW 4.28.185(5).

* * *

THEREFORE, Defendant Auto Trakk's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 20) is HEREBY DENIED.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 10th day of October, 2017.

Ronald B. Leighton
United States District Judge